UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LANCE MURSCHEL,<br>CDCR #P-04895,<br><br>                      Plaintiff,<br><br>    vs.<br><br>DANIEL PARAMO, et al.,<br>                      Defendants. | Case No.: 3:17-cv-1142-BTM-AGS<br><br>**ORDER:**<br><br>**(1) DENYING MOTION FOR APPOINTMENT OF COUNSEL;**<br><br>**(2) DENYING MOTION FOR ORDER GRANTING INUNCTION; AND**<br><br>**(3) DISMISSING CLAIMS FOR FAILING TO STATE A CLAIM** |

Lance Murschel ("Plaintiff"), a prisoner incarcerated the Richard J. Donovan Correctional Facility ("RJD") located in San Diego, California, and proceeding pro se, has filed a civil rights complaint ("Compl.") pursuant to 42 U.S.C. § 1983. (ECF No. 1.) Plaintiff also filed a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a) (ECF No. 2), a "Motion for a Temporary Restraining Order ("TRO") and Preliminary Injunction" (ECF No. 3) and a "Motion to Appoint Counsel" (ECF No. 4).

On June 14, 2017, the Court granted Plaintiff's Motion to Proceed IFP and denied his Motion for Appointment of Counsel. (ECF No. 7.) On July 3, 2017, the Court denied

Plaintiff's Motion for Restraining Order and Preliminary Injunction. (ECF No. 9.) Plaintiff has now filed a second Motion to Appoint Counsel, as well as a "Motion for Order Granting Injunction." (ECF Nos. 11, 13.)

**I.  Motion to Appoint Counsel**

Plaintiff again seeks counsel in this matter. (ECF No. 11.) An inmate who has written this motion on behalf of Plaintiff claims that Plaintiff's medical condition has left him "no capacity to represent himself." (*Id.* at 4.) However, there is no constitutional right to counsel in a civil case. *Lassiter v. Dept. of Social Services*, 452 U.S. 18, 25 (1981). While under 28 U.S.C. § 1915(e)(1), district courts have some limited discretion to "request" that an attorney represent an indigent civil litigant, *Agyeman v. Corr. Corp. of America*, 390 F.3d 1101, 1103 (9th Cir. 2004), this discretion is rarely exercised and only under "exceptional circumstances." *Id.*; *see also Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). A finding of exceptional circumstances requires "an evaluation of the likelihood of the plaintiff's success on the merits and an evaluation of the plaintiff's ability to articulate his claims 'in light of the complexity of the legal issues involved.'" *Agyeman*, 390 F.3d at 1103, quoting *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986).

Applying these factors to Plaintiff's case, the Court **DENIES** his Motion to Appoint Counsel. All documents filed by pro se litigants are construed liberally, and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Moreover, FED. R. CIV. P. 8(e) requires that "[p]leadings . . . be construed so as to do justice."

The pleadings filed by Plaintiff to date demonstrate that while Plaintiff may not be a trained in law, he is capable of legibly articulating the facts and circumstances relevant to his claims, which are typical, straightforward, and not legally "complex." *Agyeman,* 390 F.3d at 1103. The Court does find that Plaintiff has alleged that he suffers from a serious medical condition but all the pleadings Plaintiff has filed so far do no indicate that

he is unable to articulate his claims. Therefore, neither the interests of justice nor any exceptional circumstances warrant the appointment of counsel in this case at this time. *LaMere v. Risley*, 827 F.2d 622, 626 (9th Cir. 1987); *Terrell*, 935 F.2d at 1017.

## II. Motion for Order Granting Injunction

Plaintiff previously sought injunctive relief in which he sought an order from this Court to "ensure that he is not transferred out of Richard J. Donovan Correctional Facility." (ECF No. 3 at 1.) The Court directed the Defendants to file a response to this motion. Defendants filed their opposition indicating that Plaintiff "is not scheduled to be transferred from RJD." (ECF No. 8 at 2.) The Court denied Plaintiff's request as there was no documentation or any other evidence to support his claim that he was going to be transferred. (ECF No. 9.) Plaintiff has now filed a second Motion for Preliminary Injunction and is seeking the same relief requested in his first motion. (ECF NO. 13.) Plaintiff claims he "exhibits high anxiety anticipating fearfully a move from his current placement to another prison or change of housing from this current housing to another yard." (*Id.* at 2.)

"The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction." *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995); *see also Stuhlbarg Intern. Sales Co., Inc. v. John D. Brushy and Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (standards for issuing a TRO are "substantially identical" to those for issuing a preliminary injunction). A plaintiff seeking a preliminary injunction must establish: (1) a likelihood of success on the merits; (2) a likelihood that plaintiff will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008).

In order to meet the "irreparable harm" requirement, Plaintiff must do more than simply *allege* imminent harm; he must demonstrate it. *Caribbean Marine Servs. Co., Inc. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988). This requires Plaintiff to demonstrate by

specific facts that he faces a credible threat of immediate and irreparable harm, unless an injunction issues. FED. R. CIV. P. 65(b). "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Caribbean Marine*, 844 F.2d at 674-75.

Here, the Court finds that Plaintiff has failed to establish the imminent irreparable harm required to support a preliminary injunction. *See Winter*, 555 U.S. at 20; *Alliance for the Wild Rockies*, 632 F.3d at 1131. Plaintiff must establish that the threat of future injury is both "real and immediate," not just "conjectural" or "hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Plaintiff's request is only based on his fear that the transfer may happen but has offered no basis or documentation to support his concern that he will be transferred. Defendants had previously informed the Court that there was no intention to transfer Plaintiff.

Regardless, Plaintiff does not have a constitutional right to be housed in the institution of his choice. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *McKune v. Lile*, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise.")

For all these reasons, Plaintiff's Motion for Order granting Injunction (ECF No. 13) is DENIED.

## III. Initial Screening per 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)

### A. Standard of Review

Notwithstanding Plaintiff's IFP status or the payment of any partial filing fees, the Prison Litigation Reform Act ("PLRA") obligates the Court to review complaints filed by all persons proceeding IFP and by those, like Plaintiff, who are "incarcerated or detained in any facility [and] accused of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms or conditions of parole, probation, pretrial release, or diversionary program," "as soon as practicable after docketing." *See* 28 U.S.C. §§ 1915(e)(2) and 1915A(b). Under these statutes, the Court must sua sponte dismiss complaints, or any portions thereof, which are frivolous, malicious, fail to state a claim,

or which seek damages from defendants who are immune. *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b); *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (§ 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)).

All complaints must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. The "mere possibility of misconduct" falls short of meeting this plausibility standard. *Id*.; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

"When there are well-pleaded factual allegations, a court should assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see also Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000) ("[W]hen determining whether a complaint states a claim, a court must accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff."); *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (noting that § 1915(e)(2) "parallels the language of Federal Rule of Civil Procedure 12(b)(6)").

However, while the court "ha[s] an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)), it may not "supply essential elements of claims that were not initially pled." *Ivey v. Board of Regents of the University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

**B. Plaintiff's factual allegations[1]**

On February 6, 2015, Plaintiff was "accused of battering" Defendant Melton, a Psychiatric Technician. (Compl. at 9, 26.) Specifically, Melton "accused [Plaintiff] of grabbing her hand and stating that her 'days are done.'" (*Id.* at 9.) A Rules Violation Report ("RVR") was issued and Plaintiff was housed in Administrative Segregation ("ad-seg") for a year. (*Id.*) Plaintiff maintains that prior to this incident, Melton refused to supply Plaintiff with his medication "on several occasions without any justification." (*Id.* at 26.) Plaintiff "notified" Defendant McGee regarding "H. Melton behavior and the abusive treatment" but McGee "fail[ed] to resolve the problems or assist the Plaintiff." (*Id.*) Plaintiff "verbally notified" McGee and Melton that he would file administrative grievances against them "for their unprofessional behavior and unlawful conduct." (*Id.*)

Defendant Magar conducted the "physical evaluation of injuries" pertaining to the February 6th incident and reported "no injuries." (*Id.* at 27.) Defendant Soto ordered Plaintiff's placement in ad-seg but Plaintiff argues that this placement was "not supported by any evidence and was based on incomplete records." (*Id.*) Plaintiff maintains that he has brain cancer and as a result of his treatment for cancer he has lost "notion of reality and lack of clarity to function or behave appropriately." (*Id.*)

The initial hearing regarding the RVR was conducted on February 9, 2015 by Defendant Juarez. (*Id.*) Plaintiff claims that Juarez denied Plaintiff the "right to have an investigative employee assigned" to him. (*Id.*) As a result, Plaintiff argues that he was unable to obtain "information or evidence to corroborate his position that he did not batter" Melton. (*Id.*) Plaintiff further claims that Juarez lied in his report when he stated that Plaintiff did not ask for witnesses at his hearing. (*Id.* at 28.)

On February 20, 2015, Defendant Trimble, a staff Psychologist, conducted an examination "to determine Mental Health Assessment requested by custody staff." (*Id.*)

---

[1] The page numbers cited to in this Order are page numbers for docketed materials imprinted by the Court's electronic case filing system.

Plaintiff contends Defendant Trimble "failed to consider Plaintiff's actual medical and mental health needs" and how they could "play a role" in the February 6th incident. (*Id.*) Based on Trimble's assessment, Plaintiff remained in ad-seg. (*Id.* at 29.)

On August 10, 2015, Plaintiff appeared before the Institutional Classification Committee ("ICC") for a hearing at which time he claims Defendant Brown, a staff Psychologist, was "deliberately indifferent" to Plaintiff's mental health needs when he "reported that Plaintiff's [ad-seg] placement risk of decompensation was moderate." (*Id.*) Based on this recommendation, the ICC ordered Plaintiff to be retained in ad-seg "pending a transfer due to 'staff separation alert' on Facility C." (*Id.*)

Plaintiff was later assigned Defendant Hodges, a correctional officer, as his "Staff Assistant" to "assist him in the presentation of his defense at the RVR hearing." (*Id.* at 30.) However, Plaintiff claims Hodges failed to assist him in the preparation of his defense and failed to "present Plaintiff's position at the RVR hearing." (*Id.*) Plaintiff claims Hodges failed to present evidence that Plaintiff had "developmental disabilities and severe mental illness disorder." (*Id.*)

On March 18, 2015, Defendant Sanchez "denied Plaintiff's right to call witnesses and to question or examine them during the RVR hearing." (*Id.*) In addition, Sanchez "relied only on the misleading investigative report filed by the investigative employee." (*Id.* at 31-32.) Sanchez's "guilty finding" was based solely on "Ms. Melton's contradictory allegations with no other evidence." (*Id.* at 32.) Plaintiff contends that the investigative employee assigned to him, Defendant Longworth, conducted an "inappropriate investigation that instead of clarifying the facts, misconstrue[d] it with the malice and intent to harm or cause an injury." (*Id.*)

Plaintiff claims that all Defendants needed to do was "order Ms. Melton to be removed from her Facility "C" job position to another facility to avoid unnecessary and wanton infliction of more pain and suffering" to Plaintiff. (*Id.* at 34.) Instead, Defendant Stratton denied Plaintiff's disciplinary appeal "without any logical reason." (*Id.*)

///

## II. Screening Pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)

### A. Standard of Review

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.,* 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*

## A. 42 U.S.C. § 1983

Title 42 U.S.C. § 1983 provides a cause of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

## B. Due Process claims

Plaintiff claims his due process rights were violated when Defendants allegedly "fabricated false charges," denied him the right to call witnesses at his disciplinary hearing, and "found Plaintiff guilty of the false charges based on an incomplete record." (Compl. at 42.) Specifically, Plaintiff alleges that Defendant Melton "falsely accused [Plaintiff] of grabbing her hand and stating that her 'days are done [expletive].'" (*Id.* at 9.) He further claims Melton "fabricated false rules violation report ("RVR")." (*Id.*)

To the extent that Plaintiff challenges the issuance of his RVR on grounds that it included false information, he cannot state a claim. *See e.g.*, *Dawson v. Beard*, 2016 WL 1137029 at *5-6 (E.D. Cal. 2016) ("The issuance of a false RVR, alone, does not state a claim under section 1983."); *Ellis v. Foulk*, 2014 WL 4676530, at *2 (E.D. Cal. 2014) (noting that claims of arbitrary action by prison officials are grounded in "'the procedural due process requirements as set forth in *Wolff v. McDonnell*.'") (quoting *Hanrahan v. Lane*, 747 F.2d 1137, 1140 (7th Cir. 1984)); *Solomon v. Meyer*, 2014 WL 294576, at *2 (N.D. Cal. 2014) ("[T]here is no constitutionally protected right to be free from false disciplinary charges.") (citing *Chavira v. Rankin*, 2012 WL 5914913, at *1 (N.D. Cal. 2012) ("The Constitution demands due process, not error-free decision-making.")); *Johnson v. Felker*, 2013 WL 6243280, at *6 (E.D. Cal. 2013) ("Prisoners have no constitutionally guaranteed right to be free from false accusations of misconduct, so the mere falsification of a [rules violation] report does not give rise to a claim under section 1983.") (citing *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989) and *Freeman v.*

*Rideout*, 808 F.2d 949, 951-53 (2d Cir. 1986)).

In addition, to the extent that Plaintiff claims that the way in which the disciplinary hearings were held violated his due process rights, he also fails to state a claim upon which § 1983 relief can be granted. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

The Due Process Clause protects prisoners against deprivation or restraint of "a protected liberty interest" and "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)) (internal quotation marks omitted).

Although the level of the hardship must be determined in a case-by-case determination, courts look to:

> 1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence.

*Ramirez,* 334 F.3d at 861 (quoting *Sandin*, 515 U.S. at 486-87); *see also Chappell v. Mandeville*, 706 F.3d 1052, 1064-65 (9th Cir. 2013). Only if an inmate has alleged facts sufficient to show a protected liberty interest does the court next consider "whether the procedures used to deprive that liberty satisfied Due Process." *Ramirez,* 334 F.3d at 860.

As currently pleaded, Plaintiff's Complaint contains factual allegations sufficient to show a protected liberty interest because he has alleged facts to plausibly show that the disciplinary punishment he faced amounted to any "atypical and significant hardship in relation to the ordinary incidents of prison life." *Id.*; *Sandin*, 515 U.S. at 584.

Plaintiff was placed in the ad-seg on February 6, 2015 following the claims made by Melton. (*See* Compl. at 14; Ex. 3, Administrative Segregation Unit Placement Notice dated Feb. 6, 2015.) Plaintiff alleges that he was retained in the ad-seg for a year and subjected to a "dark, damp, cold cell with feces on the floor from a malfunctioning toilet." (Compl. at 9.) Plaintiff further alleges that he had to submit to "strip searches

every time he exited his cell," as well as being denied phone calls, packages, televisions, radios, and contact visits. (*Id.*)

The Court finds that his pleading contains "factual content that allows the court to draw the reasonable inference," *Iqbal*, 556 U.S. at 678, that Defendants' actions "presented a dramatic departure from the basic conditions of [Plaintiff's] indeterminate sentence," or caused him to suffer an "atypical" or "significant hardship." *Sandin*, 515 U.S. at 584-85. However, even if Plaintiff has alleged facts sufficient to invoke a protected liberty interest under *Sandin*, he fails to plead facts to plausibly show he was denied the procedural protections the Due Process Clause requires. *See Iqbal*, 556 U.S. at 678; *Ramirez,* 334 F.3d at 860 (citations omitted); *see also Brown v. Oregon Dep't of Corr.*, 751 F.3d 983, 987 (9th Cir. 2014). Those procedures include: (1) written notice of the charges at least 24 hours before the disciplinary hearing; (2) a written statement by the fact-finder of the evidence relied on and reasons for the disciplinary action; (3) the right to call witnesses and present documentary evidence if doing so will not jeopardize institutional safety or correctional goals; (4) the right to appear before an impartial body; and (5) assistance from fellow inmates or prison staff in complex cases. *Wolff v. McDonnell*, 418 U.S. 539, 563-72 (1974); *Serrano v. Francis*, 345 F.3d 1071, 1079-80 (9th Cir. 2003).

Plaintiff claims that on March 11, 2005, Defendant Hodges was "assigned as Plaintiff's Staff Assistance (SA) to assist him in the presentation of a defense in the RVR hearing." (Comp. at 17.) However, he claims Hodges failed to "assist the Plaintiff in the preparation of his RVR hearing" and also failed to "represent Plaintiff's position at the RVR hearing to ensure that Plaintiff's position is understood." (*Id.*) While Plaintiff may believe that the level of assistance was inadequate, *Wolff* only requires "aid in the form of help from the staff" in cases where "an illiterate inmate is involved" or where the "complexity of the issue" makes assistance from staff necessary. *Wolff*, 418 U.S. at 569. Here, Plaintiff does admit, and the exhibits demonstrate, that a staff member was assigned which satisfies *Wolff*.

Plaintiff also claims Defendant Sanchez, as the hearing officer for his RVR hearing on March 18, 2015, denied Plaintiff's right to call witnesses and "to question or examine them" during the hearing. (Compl. at 30.) However, Plaintiff's own exhibits, which includes a report following the March 19, 2015 hearing, indicates that Plaintiff requested to call Melton, as well as several other correctional officers and inmates, as witnesses. (*See* Compl. at 55-56, RVR - Part "C" dated April 2, 2015.) Based on this report, Melton testified before the hearing officer and testimony from the other witnesses were submitted in writing pursuant to a stipulation. (*Id.*) It appears from Plaintiff's Complaint that he is arguing that testimony must be in person but because some testimony was written, he was denied the right to call witnesses. However, *Wolff* does not require that witness testimony be in person or in writing. Therefore, the Court finds Plaintiff was able to call witnesses.

Finally, Plaintiff claims that the hearing officer found him guilty based on Melton's false "coached testimony" and the "false report." (Compl. at 32.) To the extent Plaintiff challenges either the reliability or sufficiency of the evidence used to support the disciplinary conviction itself, he also fails to state a claim. *Wolff* does not require either judicial review or a "specified quantum of evidence" to support the fact finder's decision. *Superintendent, Mass. Correctional Inst. v. Hill*, 472 U.S. 445, 454 (1985). Rather, a prison disciplinary board's findings are upheld where they "are supported by some evidence in the record." *Id.* at 454-55. The "some evidence" standard is "minimally stringent," and a decision must be upheld if there is any reliable evidence in the record that could support the conclusion reached by the fact finder. *Powell v. Gomez*, 33 F.3d 39, 40 (9th Cir. 1994) (citing *Hill*, 472 U.S. at 455-56).

Here, the exhibits attached to Plaintiff's Complaint are sufficient to show his disciplinary conviction was supported by "some evidence," *Hill*, 472 U.S. at 454-55. The "some evidence" standard supporting a prison disciplinary violation "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Hill*, 472 U.S. at 455. The Constitution does not even

"require evidence that logically precludes any conclusion but the one reached by the disciplinary board." *Id.* at 457. Even where the evidence "might be characterized as meager," if "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary," those findings must be upheld. *Id.* Here, the findings were based on the testimony of Melton and the report issued by a correctional officer who claims to have been a witness to the incident. The Court finds this constitutes "some evidence" that supports Plaintiff's disciplinary conviction. (*See* Compl., Ex. 1, RVR - Part C at 56.)

Plaintiff also claims that Defendants have "arbitrarily refused to provide the necessary and required assistance to prepare judicial forms or to seek administrative remedies." (Compl. at 42.) In his Complaint, Plaintiff sets forth, in great detail, his efforts in filing administrative grievances. (*See id.* at 36-41.) In many instances, Plaintiff claims that prison officials failed to provide assistance, failed to respond to grievances or rejected Plaintiff's appeal on technical grounds. (*Id.*) However, a prison official's alleged improper processing of an inmate's grievances or appeals, without more, cannot serve as a basis for section 1983 liability. See generally *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (prisoners do not have a "separate constitutional entitlement to a specific prison grievance procedure.") (citation omitted); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (due process not violated simply because defendant fails properly to process grievances submitted for consideration); see also *Shallowhorn v. Molina*, 572 Fed. Appx. 545, 547 (9th Cir. 2014) (district court properly dismissed section 1983 claims against defendants who "were only involved in the appeals process") (citing *Ramirez*, 334 F.3d at 860).

Accordingly, the Court finds that Plaintiff's Complaint fails to state a procedural due process claim as to any Defendant; therefore, his Fourteenth Amendment claims are also subject to sua sponte dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1). *See Lopez*, 203 F.3d at 1126-27; *Rhodes*, 621 F.3d at 1004.

///

## C. Access to Courts claim

Plaintiff also alleges that Defendants have "obstruct[ed] justice Plaintiff's access to the Courts." (Compl. at 42.) Prisoners have a constitutional right to access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996). The right is limited to the filing of direct criminal appeals, habeas petitions, and civil rights actions. *Id.* at 354. Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a suit that cannot now be tried (backward-looking claim). *Christopher v. Harbury*, 536 U.S. 403, 412-15 (2002); *see also Silva v. Di Vittorio*, 658 F.3d 1090, 1102 (9th Cir. 2011) (differentiating "between two types of access to court claims: those involving prisoners' right to affirmative assistance and those involving prisoners' rights to litigate without active interference.").

However, Plaintiff must allege "actual injury" as the threshold requirement to any access to courts claim. *Lewis*, 518 U.S. at 351-53; *Silva*, 658 F.3d at 1104. An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis*, 518 U.S. at 348; *see also Jones v. Blanas*, 393 F.3d 918, 936 (9th Cir. 2004) (defining actual injury as the "inability to file a complaint or defend against a charge"). The failure to allege an actual injury is "fatal." *Alvarez v. Hill*, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) ("Failure to show that a 'non-frivolous legal claim had been frustrated' is fatal.") (quoting *Lewis*, 518 U.S. at 353 & n.4).

In addition, Plaintiff must allege the loss of a "non-frivolous" or "arguable" underlying claim. *Harbury*, 536 U.S. at 413-14. The nature and description of the underlying claim must be set forth in the pleading "as if it were being independently pursued." *Id.* at 417. Finally, Plaintiff must specifically allege the "remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." *Id.* at 415.

///

Plaintiff's Complaint fails to allege the actual injury required to state an access to courts claim. *See Lewis*, 518 U.S. at 351-53; *Silva*, 658 F.3d at 1104. Thus, the Court finds that Plaintiff's Complaint fails to include any "factual matter" to show how or why any of the individual Defendants in *this* case caused him to suffer any "actual prejudice" "such as the inability to meet a filing deadline or to present a claim," with respect to any case. *Lewis*, 518 U.S. at 348; *Jones*, 393 F.3d at 936; *Iqbal*, 556 U.S. at 678.

Thus, because Plaintiff has failed to allege facts sufficient to show that Defendants caused him to suffer any "actual injury" with respect to any non-frivolous direct criminal appeal, habeas petition, or civil rights action he may have filed, *see Lewis*, 518 U.S. at 354, the Court finds Plaintiff's access to courts claims must be dismissed for failing to state a plausible claim upon which § 1983 relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii), § 1915A(b)(1); *Iqbal*, 556 U.S. at 678.

### D. Retaliation claims

Plaintiff claims Defendants subjected him to "adverse actions" in retaliation for Plaintiff "threatening them" with the "filing of grievances." (Compl. at 42.) Retaliation against a prisoner for exercising his rights to speech or to petition the government may violate the First Amendment. *See Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

Plaintiff claims that the "adverse actions" taken against him was the RVR written by Defendant Melton and Defendants decision to find him guilty of disciplinary charges which resulted in him being housed in the ad-seg. (Compl. at 42.) Plaintiff claims Defendant Melton retaliated against him when she wrote the allegedly false RVR report

because Plaintiff claims he had "verbally put her on notice that I was keeping track of her misbehavior and harassment towards mentally ill inmates." (*Id.* at 9.) While these facts may be sufficient to state a retaliation claim against Melton, Plaintiff fails to provide any factual allegations sufficient to state a retaliation claim against any other named Defendants. Plaintiff must allege facts that demonstrate that each of the named Defendants knew he was engaged in "protected conduct" and that they took an "adverse action" against him.

Therefore, Plaintiff's retaliation claims against all Defendants, with the exception of Defendant Melton, must be DISMISSED for failing to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b)(1).

### E. Conspiracy claims

Throughout Plaintiff's Complaint he alleges a vast conspiracy against him by the Defendants. However, the Court finds Plaintiff's Complaint fails to state a claim for conspiracy under section 1983, because it offers only "naked assertions devoid of further factual enhancement," *Iqbal*, 556 U.S. at 678, to show the existence of an agreement or a meeting of the minds to violate his constitutional rights, or any actual deprivation of those constitutional rights. *Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010); *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2001).

Therefore, Plaintiff's conspiracy claims against all Defendants must be DISMISSED for failing to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b)(1).

### F. Eighth Amendment claims

Plaintiff alleges Defendant Melton was "grossly negligent and deliberately indifferent to Plaintiff's serious mental health needs and medical needs, and intentionally denied and delayed Plaintiff's access to proper medication." (Compl. at 12-13.) Plaintiff claims that Defendants Trimble and Brown, both psychologists, were also deliberately indifferent to his serious mental health needs. (*See id.* at 15-16.) Plaintiff claims Defendants Trimble and Brown refused to recognize and report to the hearing officer at

Plaintiff's disciplinary hearing that his "mental disorder appears to have contributed in part to his behavior or verbal comments." (*Id.* at 15.) In addition, Plaintiff claims that they should have provided an "assessment" which would show that the penalties he would receive while housed in the ad-seg would expose him to "risk of decompensation." (*Id.* at 16.)

Only "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976) (citation and internal quotation marks omitted). "A determination of 'deliberate indifference' involves an examination of two elements: (1) the seriousness of the prisoner's medical need and (2) the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

First, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992), citing Estelle, 429 U.S. at 103-04. "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 914 F.2d at 1059, quoting *Estelle*, 429 U.S. at 104. "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." *Id.*, citing *Wood v. Housewright,* 900 F.2d 1332, 1337-41 (9th Cir. 1990); *Hunt v. Dental Dept.*, 865 F.2d 198, 200-01 (9th Cir. 1989).

At this stage of the pleadings, the Court will presume Plaintiff's claims regarding his medical and mental health care needs are sufficient to plead an objectively serious medical need. *McGuckin*, 914 F.2d at 1059. However, even assuming Plaintiff's medical

needs are sufficiently serious, his Complaint still fails to include any further "factual content" to show that any Defendant acted with "deliberate indifference" to his needs. *Id.*, at 1060; *see also Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *Iqbal*, 556 U.S. at 678.

Plaintiff offers no specific factual allegations as to the insufficient medical care claims he makes against of the named Defendants. Plaintiff does not identify the type of medication Defendant Melton allegedly refused to provide Plaintiff. He does not specifically identify the condition for which the medication was being used to treat him. Plaintiff does allege that he suffers from serious medical needs including brain cancer but he does not appear to allege that he is being denied any treatment or medication for that medical condition. (*See* Compl. at 15.) Therefore, the Court finds that Plaintiff has not stated an Eighth Amendment deliberate indifference to a serious medical need as to any of the named Defendants.

However, the Court finds that Plaintiff has alleged claims that Defendants Trimble and Brown were deliberately indifferent to his serious mental health needs. Plaintiff claims that Defendant Brown informed the ICC that his "risk of decompensation" while housed in ad-seg was only "moderate" which caused him to be retained in ad-seg pending his disciplinary hearing despite his mental health needs. (Compl. at 15-16.) As to Defendant Trimble, Plaintiff has attached the RVR report which indicates that Trimble provided a mental health assessment of Plaintiff for use at the RVR hearing. (Compl., Ex. 1, ECF No. 1 at 54, Rules Violation Report - Part C dated Apr. 2, 2015.) The RVR report indicates that Trimble made a recommendation that Plaintiff's penalties as a result of the disciplinary conviction include "loss of visits, loss of phone calls, and loss of dayroom" even though these Trimble also found that these penalties "may pose an increased risk for decompensation" to Plaintiff. (*Id.*) Based on these allegations, the Court finds that Plaintiff has stated an Eighth Amendment deliberate indifference to a serious mental health need as to Defendants Brown and Trimble.

///

## IV. Conclusion and Order

Good cause appearing, the Court:

1) **DENIES** Plaintiff's Motion for Restraining Order and Preliminary Injunction (ECF No. 13) without prejudice;

2) **DENIES** Plaintiff's Motion for Appointment of Counsel (ECF No. 11).

3) **DISMISSES** all the claims in Plaintiff's Complaint, with the exception of the retaliation claim against Melton and the Eighth Amendment claims against Brown and Trimble, for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1), and **GRANTS** him forty-five (45) days leave from the date of this Order to either: (1) file an Amended Complaint which cures all the deficiencies of pleading noted above or (2) notify the Court of the intention to proceed as to the retaliation claim against Defendant Melton and the Eighth Amendment claims against Trimble and Brown only.

If Plaintiff chooses to file an Amended Complaint, it must be complete by itself without reference to his original pleading, and must comply with S.D. CAL. CIVLR 8.2(a). Defendants not named and any claim not re-alleged in his Amended Complaint will be considered waived. *See* S.D. CAL. CIVLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

4) The Clerk of Court is directed to mail Plaintiff a civil rights complaint form for his use in amending.

**IT IS SO ORDERED**.

Dated: January 22, 2018

Hon. Barry Ted Moskowitz, Chief Judge
United States District Court